**UNITED STATES of America, Appellee,**

v.

**Arthur SOMMER, Defendant-Appellant.**

**No. 940, Docket 86–1462.**

United States Court of Appeals,
Second Circuit.

Argued March 23, 1987.

Decided March 26, 1987.

Earl L. Scott, New York City (Janis P. Farrell, Scott and Farrell, New York City, of counsel), for defendant-appellant.

Gordon Mehler, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before PIERCE and PRATT, Circuit Judges, and LASKER, Senior District Judge.[*]

PIERCE, Circuit Judge:

Appellant, Arthur Sommer, and his wife Winona, who does not appeal, were convicted of two counts of mail fraud in violation of 18 U.S.C. § 1341 in the United States District Court for the Eastern District of New York, Mishler, *Judge*, after a jury trial. The facts underlying these convictions are briefly summarized.

**I**

In 1983, the Sommers formed an organization called the National List Protection Agency ("NLPA"). Count One of the indictment [1] charges them with devising a scheme whereby they solicited people to submit either $25 or $28 to become "mailing list protection agents" or "decoys." Decoys are people placed on a mailing list so that the owners of the mailing list can determine if the list has been used without authorization. In their solicitation, the Sommers claimed to have numerous mailing list clients in need of protection and represented that decoys could make "up to $200.00 or more per week" by returning decoy mail they received to NLPA for payment at the rate of thirty cents per piece plus postage. In fact, some of those who

---

[*] Hon. Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

1. Appellant was initially indicted on June 19, 1986, for two counts of mail fraud and two counts of Social Security fraud. A pretrial motion to sever the Social Security counts from the mail fraud counts was granted, and the Social Security counts were later dismissed at the time of sentencing, upon the government's motion. A superseding indictment identical in substance to the June 19 indictment was obtained by the government on September 19, 1986, three days

prior to trial, to cure any possible prejudice resulting from the loss of the grand jury minutes relating to the June 19 indictment. The superseding indictment was returned based on the testimony of Inspector Ryan, who had also testified before the first grand jury. However, with the consent of the defendants, the government tried the defendants on the original indictment, and the superseding indictment was dismissed at the time of sentencing. All references herein to the "indictment" refer to the original indictment of June 19, upon which the case was tried and appellant convicted.

signed up to become decoys never received any decoy mail and earned nothing. Of the hundreds NLPA enlisted, only 49 were shown to have made any money at all. Of those who did make money, the evidence shows that Mrs. Sommer's mother made the most, $15.00, and only four other decoys earned as much as $4.00.

Count Two charges that the Sommers engaged in a mass-mailing beginning in 1985 which informed people selected at random that they had won a $1200 gift. They were instructed that to claim this gift, all they had to do was to send NLPA $3.50 to cover postage and handling. Those who sent money received a "gift certificate" purportedly worth $1200, but which in reality only entitled the bearer to advertising space in a bogus business newsletter published by NLPA.

## II

One of appellant's contentions on this appeal relates to the loss of certain grand jury minutes. The court reporter for the grand jury which indicted appellant was unable to locate the minutes of the grand jury proceedings, including the testimony of Postal Inspector Patrick Ryan, upon whose testimony the indictment was returned. By way of pretrial motion, appellant sought to have sanctions imposed on the government for the loss of the court reporter's notes. Three days prior to trial, the district judge conducted a hearing on the issue of the lost grand jury minutes to ascertain "the degree of culpability of the Government." After hearing testimony from both the court reporter and Inspector Ryan, the district court found no evidence of government negligence and denied the motion for imposition of sanctions.

Appellant argues that the district court erred in refusing to dismiss the indictment or preclude Inspector Ryan from testifying at trial because the prosecutor must bear some of the blame for the loss of the grand jury minutes of Ryan's testimony since he did not attempt to secure them in a timely fashion. Specifically, appellant contends that Ryan was a material witness and the grand jury minutes were needed to im-peach him on cross-examination. We are not persuaded by appellant's arguments.

We have recognized that in appropriate cases intentional or deliberate destruction of evidence may warrant the imposition of sanctions. *United States v. Henriquez,* 731 F.2d 131, 137–38 (2d Cir.1984); *United States v. Beltempo,* 675 F.2d 472, 479 (2d Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982); *United States v. Grammatikos,* 633 F.2d 1013, 1019 (2d Cir.1980); *United States v. Bufalino,* 576 F.2d 446, 449 (2d Cir.), *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978); *United States v. Miranda,* 526 F.2d 1319, 1324 & n. 4 (2d Cir.1975) (listing possible sanctions), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). In *Miranda* we stated that the decision whether to impose sanctions for destruction of evidence involves a pragmatic balancing test which weighs the extent of the government's culpability for the destruction on the one hand, against the amount of prejudice to the defense which resulted on the other. 526 F.2d at 1327–28. In *Grammatikos* we specifically noted that "sanctions should not be imposed on the government for the *loss* of [discoverable] material." 633 F.2d at 1019 (emphasis added); *see also Beltempo,* 675 F.2d at 479 (sanctions not imposed where evidence lost, not intentionally destroyed). Applying these principles to the instant case, it is clear that the district court properly denied appellant's motion for the imposition of sanctions.

We need go no further than to note that in this instance the district court explicitly found the government not to be culpable for the loss of the minutes. In exonerating the government from any wrongdoing, the district court noted that the court reporter's contract was with the court, not with the prosecutor, and concluded that the "prosecutor ... had nothing whatever to do with the lost notes." Rather, the district court attributed the loss to a busy, overworked court reporter whose loss of the minutes amounted to "[p]ure inadvert[e]nce" that did not rise to the level of "negligence." Under these circumstances, where the government was found not to be

at fault for the loss of Inspector's Ryan's grand jury testimony, we need not even reach that part of the balancing test which inquires into whether appellant suffered any prejudice to hold that sanctions are not appropriate. *See United States v. Perry,* 471 F.2d 1057, 1068 (D.C.Cir.1972) ("if the Government was neither malicious, negligent, nor stupid, we do not see that any question of weighing possible prejudice to the defendants arises"); *see also United States v. Person,* 478 F.2d 659, 660 (D.C. Cir.1973) (per curiam) (absent bad faith or negligence, sanctions for court reporter's loss of grand jury minutes not warranted).

In an effort to show that the government was in some way negligent, appellant argues that the prosecutor should have asked for the grand jury minutes sooner than he did—three weeks before the trial was scheduled to begin. This argument is without merit. We are aware of no rule that requires the government to obtain a transcript by any specific date. Fed.R.Crim.P. 6(e)(1) requires only that the government attorney retain custody and control of any recordings, notes, or transcripts after the transcripts have been prepared by the court reporter and after they have been delivered to the attorney for the government. While it would seem desirable that the government obtain records of grand jury proceedings shortly after they are conducted, Rule 6(e)(1) does not require the government to procure a transcript at any particular time before trial. Thus, the government's failure to inquire into the whereabouts of the minutes during the period between the grand jury proceeding and the time it became aware of the absence of those minutes does not amount to negligence such that sanctions are warranted herein.

Moreover, even had the government in some way been found negligent either through its own conduct or by imputing to the government negligence on the part of the court reporter, *see Perry,* 471 F.2d at 1068, sanctions would not have been appropriate in this instance because appellant has not shown that he suffered the necessary prejudice for their imposition. First, at the pretrial hearing, the district court characterized Inspector Ryan's testimony relating to appellant as only "[v]ery formal" in nature; in fact, at trial, his testimony was introduced to provide background evidence of the investigation of the Sommers, while the evidence of mail fraud was established primarily through the testimony of victim-witnesses, rather than through the testimony of Inspector Ryan. As such, appellant has not met the required showing that the missing testimony be "material in the sense that its suppression undermined confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). Perhaps even more significantly, the testimony that Ryan gave to the grand jury which issued the superseding indictment, see note 1, *supra,* was available to appellant. While it is not suggested that this testimony was necessarily identical to the earlier testimony which was lost, appellant was not left bereft of any prior sworn testimony whatsoever with which to attempt to impeach Ryan's credibility. Therefore, we cannot say that appellant was irreparably harmed by the loss of the prior grand jury testimony. *See United States v. Peters,* 587 F.2d 1267, 1276 (D.C. Cir.1978).

### III

We have considered appellant's other arguments and find them to be without merit.

The judgment of conviction is affirmed.