**UNITED STATES of America, Appellee,**

v.

**Adalberto GALLO–ROMAN, Defendant-Appellant.**

**No. 634, Docket 86–1319.**

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1987.

Decided April 8, 1987.

William M. Brodsky, New York City (Baden, Kramer, Huffman & Brodsky, P.C., New York City, of counsel), for defendant-appellant.

Valerie Caproni, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David V. Kirby, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, TIMBERS and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appellant, Adalberto Gallo-Roman, appeals from a judgment of the United States District Court for the Eastern District of New York, Weinstein, *Chief Judge,* entered July 2, 1986, convicting him, after a jury trial, of conspiracy to possess cocaine with intent to distribute and of attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. At a pretrial suppression hearing, the district court denied appellant's motion to suppress evidence seized in a warrantless search, holding that exigent circumstances justified the search. The district court also denied appellant's motion to suppress one of his post-arrest oral statements to an agent which was not recorded in the agent's subsequent written report, holding that government agents are not required to make a full contemporaneous written record of all of a charged person's oral statements. In sentencing appel-

lant, the district court imposed two concurrent six-year terms of imprisonment, to be followed by a ten-year special parole term; also, a fine of $50 on each of the two counts.

On appeal, appellant argues, first, that there were no exigent circumstances to justify the warrantless search; second, that the government agent's failure to record in writing a portion of appellant's post-arrest oral statement requires suppression of that portion of the statement; and, third, that the district court erred in imposing a special parole term as part of appellant's sentence.

We hold that exigent circumstances justified the warrantless entry into and search of appellant's apartment. We also hold that failure to make a written record of part of an oral statement does not justify exclusion of testimony about the unrecorded part of that oral statement. Further, we modify the judgment of conviction to vacate the special parole term in the sentence imposed.

The judgment of conviction, as modified, is affirmed.

## BACKGROUND

This case results from a warrantless search of appellant's apartment during an attempted controlled delivery of contraband by agents of the Drug Enforcement Administration ("DEA") on March 12, 1986. The events leading up to that search are briefly summarized below.

In January 1986, a United States Customs mail technician in Florida intercepted two pieces of mail addressed for delivery in New York and found that they contained cocaine secreted between photographs and false backs. The envelopes and their contents were forwarded to the DEA in New York for a controlled delivery.

When the two envelopes arrived in New York, Special Agent Dean Kiernan set one aside not to be used in the controlled delivery and repackaged the five photographs contained in the other. He removed the cocaine from those photographs and replaced it with a mixture of trace amounts of cocaine and dextrose. After repackaging the five photographs, the envelope was resealed.

The envelopes were addressed to J.Q.R., P.O. Box 299, Corona, New York. On the morning of March 12, 1986, Agent Kiernan, posing as a postal inspector, placed a call to the address given on the postal box rental agreement, and was informed later that morning by return phone call that someone would be coming to the post office to claim the envelope being used in the controlled delivery. One Rosalba Agudelo arrived at the post office and sought to claim the envelope, presenting a package claim check which had been left in Box 299. When asked if she knew who the addressee, J.Q.R., was, Agudelo replied that the person was a friend who had asked her for permission to use the postal box. Further, responding to Agent Kiernan's request that she leave her address to verify postal records, Agudelo filled out a form with an address in Woodside, Queens. She took the envelope and left the post office.

Agent Kiernan, mistakenly believing that Agudelo would go to the address given on the box rental agreement, went to that location, a shoe repair shop on 111th Street in Queens. Other agents, however, actually followed Agudelo from the post office to a different location, the address she had given in Woodside. Kiernan was informed that Agudelo had in fact gone to the Woodside address and joined the agents already there approximately twenty minutes after Agudelo had entered her apartment. Immediately upon Kiernan's arrival, the agents rang the door bell and Agudelo opened the door. The agents then identified themselves as police and entered the apartment. Agent Kiernan proceeded straight down the hall directly in front of the door toward the master bedroom at the end of the hall. On the bed in the bedroom he observed the envelope which Agudelo had claimed from the post office. At the same time, he heard a noise resembling the sound of a toilet bowl being flushed coming from a bathroom adjacent to the master bedroom. Upon entering the bathroom, Kiernan saw appellant Gallo-Roman stand-

ing above the toilet bowl. In the toilet bowl was a small plastic packet which contained the cocaine that had been left as a trace sample. Also, sitting on the sink was one of the photographs which had not yet been opened. Appellant was then arrested and advised of his rights.[1]

Following his arrest, Gallo-Roman made certain incriminating oral statements to Agent Kiernan while still in the apartment. Among other statements, he stated that he could introduce the DEA agents to a cocaine dealer. Kiernan's subsequent written report recorded some but not all of Gallo-Roman's oral statements. Appellant's offer to introduce agents to others who could sell cocaine was not recorded.

As noted, at a pretrial suppression hearing, Gallo-Roman's motion to suppress the evidence seized in the apartment was denied. Appellant's motion to suppress his oral statements made following his arrest was also denied. After a jury trial, appellant was convicted. This appeal followed.

## DISCUSSION

### A. *Exigent Circumstances*

■ Under general fourth amendment principles "[s]earches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances." *United States v. Karo*, 468 U.S. 705, 714–15, 104 S.Ct. 3296, 3302–03, 82 L.Ed.2d 530 (1984). When exigent circumstances do in fact exist, however, a warrantless entry and search does not violate the fourth amendment. *Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967). Exigent circumstances refer generally to those situations in which law enforcement officers will be unable or unlikely to effectuate an arrest, search or seizure for which probable cause exists, unless they act swiftly, even though they have not obtained prior judicial authorization. *United States v. Campbell*, 581 F.2d 22, 25 (2d Cir.1978). Specifically, the Supreme Court has recognized several such

emergency conditions, for example, hot pursuit of a fleeing felon, *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976), destruction of evidence, *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966), and an ongoing fire, *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978).

■ Gallo-Roman contends that no exigent circumstances existed to justify the warrantless search of his apartment and seizure of the cocaine found therein. In other words, according to appellant, any belief on the agents' part that evidence might be destroyed was "mere speculation." In our view however, exigent circumstances did in fact exist, and the DEA case agents reasonably could have expected the evidence seized to be destroyed before they could obtain a warrant. It was certainly reasonable for the agents to conclude that, once the envelope was opened, the false backs removed from the photographs, and the discovery made that the photographs had been tampered with, it would become apparent that the scheme had been uncovered and that the authorities were near. Under these circumstances, the agents reasonably could have anticipated that the perpetrator would act quickly to destroy the evidence of unlawful conduct. Therefore, because possible destruction of the evidence was imminent, the agents did not violate the fourth amendment in entering and searching the apartment.

Appellant presents a number of arguments through which he attempts to avoid application of the exigent circumstances exception. First, appellant argues that the circumstances were not truly exigent in that the goal of the agents in entering appellant's apartment could not have been to prevent the destruction of evidence because they were already in possession of evidence (the untouched envelope not used in the controlled delivery) against Agudelo,

---

1. Rosalba Agudelo was also arrested and charged with conspiracy to possess cocaine with intent to distribute and with attempted possession of cocaine with intent to distribute. However, Agudelo pleaded guilty to the conspiracy count and testified as a government witness at appellant's trial.

the person who initially claimed the package. Rather, appellant argues, the goal of the agents in entering the apartment was only to further their investigation with a view toward finding out who else, other than Agudelo, was involved in the importing of drugs into the United States. Appellant's contention is without merit. As we have recently recognized, one of the legitimate purposes of a controlled delivery is to identify and prosecute the person or persons responsible for the movement of contraband. *United States v. Singh*, 811 F.2d 758 (2d Cir.1987) (quoting *Illinois v. Andreas*, 463 U.S. 765, 769, 103 S.Ct. 3319, 3323, 77 L.Ed.2d 1003 (1983)). While we need not rule on the question of whether identification of drug conspirators in the context of a controlled delivery alone is an exigent circumstance justifying the warrantless entry into a private residence, we do hold that, under the circumstances herein, a warrantless entry prompted by multipurposes, one of which is a legitimate exigent circumstance, renders evidence seized admissible and not a violation of the fourth amendment. Whatever the agents' other motivations in entering appellant's apartment, it was perfectly reasonable to conclude that one of their purposes, if not their primary one, was to prevent the destruction of evidence. That the evidence might only be regarded as additional evidence against someone already identified does not detract from the agents' legitimate purpose of preventing the destruction of that evidence. Moreover, as evidence against appellant, the contraband seized was certainly not cumulative; prior to the agents' entry, we are unaware of any evidence linking appellant to the drug conspiracy. We reject Gallo-Roman's contention that the agents' sole purpose in entering his apartment was to further their investigation. We are satisfied that one of the purposes which prompted their entry in this case was to prevent destruction of evidence—one of the recognized instances of exigent circumstances. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36.

Appellant further contends that the exigency in this instance was mitigated because the agents had ample time in which to obtain a telephonic warrant under Federal Rule of Criminal Procedure 41(c)(2) (warrant upon oral testimony). Specifically, appellant argues that the agents had sufficient information to prepare in advance of the controlled delivery a draft duplicate original warrant as required by Rule 41, and that they had enough time to place a call to a magistrate to furnish any missing details once they became known. To evaluate this argument, we must focus on what the agents knew in advance of the controlled delivery and how much time they had to communicate additional essential information once it became known.

■ Before the controlled delivery began, the agents knew so little that any pre-drafted duplicate original warrant would have been sketchy and incomplete to the point of being almost meaningless. All the agents knew for certain in advance was that envelopes containing cocaine and addressed to J.Q.R., P.O. Box 299, Corona, New York, had been intercepted and also the name and address listed on the box rental agreement. The agents did not know, *inter alia*, who J.Q.R. was or what connection existed between J.Q.R. and the lessee of the postal box; they did not know whether the address belonged to J.Q.R., the lessee, or neither; they did not know who would claim the envelope, what address that person would give as a home address, or whether the address given would be correct; they did not know where the person who claimed the envelope would take it, nor did they know that it would be taken into a private residence. Given the paucity of information known in advance, a pre-drafted search warrant affidavit would have been almost useless. Most, if not all, of the important details necessary to obtain a warrant, such as the exact address and particular description of the place to be searched, would have had to be filled in after the envelope was taken to the premises to be searched. Where so much critical information is missing, it would be unreasonably burdensome to impose on law enforcement officials a requirement that they prepare pre-drafted duplicate original warrants in advance of controlled deliveries.

*See United States v. Hackett*, 638 F.2d 1179, 1185 (9th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (unreasonable to require pre-drafted duplicate original warrants with blanks to be filled in in every case where possibility exists that evidence might be taken to private residence).

Moreover, quite apart from the paucity of information available in advance, the amount of time available to the agents once they learned the facts necessary to obtain a warrant was clearly insufficient for use of the procedures mandated by Rule 41. The agents first learned of the address of the subject premises when the envelope containing the cocaine was claimed at the post office. However, at that point in time, they did not know where the envelope would actually be taken. Only *twenty* minutes elapsed from the time that Agudelo entered the apartment, thereby enabling the agents to identify with certitude the premises to be searched, and the time they actually entered the apartment without a warrant. In our view, it would be unrealistic to suppose that in a mere twenty minutes a warrant properly could have been issued. First, it would be quite unrealistic to expect busy magistrates to be immediately available at all times during a controlled delivery. A reasonable period of time, surely most often one longer than twenty minutes, must be allowed for reaching a magistrate. Moreover, even assuming the immediate availability of a magistrate to act upon an application for a warrant, the agents in the field would have had to relay any missing information by phone or radio either directly to the magistrate or to an Assistant United States Attorney stationed in the magistrate's office who would then fill in the missing information and present the application to the magistrate. The magistrate would then have needed sufficient time to carefully consider the application. Under the circumstances herein, twenty minutes is hardly a sufficient period of time in which to effectuate the procedures contemplated by Rule 41. *See Hackett*, 638 F.2d at 1185 (not feasible to comply with procedures of Rule 41 in twenty minutes from a moving car).

Having concluded that there existed insufficient information to draft a duplicate original warrant in advance of the controlled delivery, and that there was insufficient time to comply with the procedures set forth in Fed.R.Crim.P. 41(c)(2), we hold that the exigency of the circumstances was not in any way mitigated by the provision in the rules for the issuance of a telephonic warrant.

**B.** *Failure to Record Oral Statements*

Appellant argues that the failure of DEA Agent Kiernan to include in his written report appellant's statement that appellant knew someone who sold cocaine should preclude any testimony by Kiernan to that effect. In essence, appellant invites us to announce a rule that law enforcement officers are required to make contemporaneous notes of every oral statement made by a defendant; failure to so record in writing a defendant's statement would render testimony about any unrecorded portion of that statement inadmissible. Our cases have previously recognized the government's duty to preserve written notes or other discoverable evidence, *see, e.g., United States v. Sommer*, 815 F.2d 15, 16 (2d Cir.1987); *United States v. Grammatikos*, 633 F.2d 1013, 1019–20 (2d Cir.1980); *United States v. Bufalino*, 576 F.2d 446, 449 (2d Cir.), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978), but we have not imposed on government agents an affirmative duty of contemporaneous note-taking. For the reasons that follow, we decline to impose such a blanket duty.

■ It is no doubt good practice on the part of law enforcement officials to record in writing, either while a defendant speaks or shortly thereafter, a defendant's oral statements. Such practice certainly enhances the reliability of the fact-finding process at trial, discourages unreliable testimony, and helps prevent fraud and dishonesty among those who testify. In fact, Agent Kiernan testified that such practice is embodied in a DEA administrative rule that oral statements of defendants be writ-

ten down if pertinent to the investigation. However, recording a statement in writing is not the only safeguard of its reliability. A witness who testifies as to his current recollection is always subject to cross-examination. The failure on the part of a witness testifying about an oral statement to take contemporaneous notes, particularly when the law enforcement agency requires that such statements be recorded, can be elicited on cross-examination, leaving the ultimate assessment of the witness' credibility where it belongs—in the hands of the trier of fact. In our view, to impose a per se rule that would automatically require suppression of testimony about an unrecorded oral statement would place an unreasonable burden on those who take statements. In this instance, Agent Kiernan in fact prepared a written record of appellant's oral statement but omitted a portion of that statement which, he testified, at that time he deemed irrelevant to the investigation. Under these circumstances, suppression of testimony regarding the unrecorded portion of the statement would not have been justified.

### C. *Special Parole Term*

The district court erred in imposing a ten-year special parole term as part of appellant's sentence. Such a term is not authorized for convictions under 21 U.S.C. § 846. *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980); *United States v. Terry,* 702 F.2d 299, 305 n. 4 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). Therefore, the special parole term imposed on appellant must be vacated, and the judgment of conviction is modified accordingly.

### CONCLUSION

In sum, we hold that exigent circumstances justified the warrantless search of appellant's apartment. We also hold that a government agent's failure to include in his written report a part of appellant's oral statement does not justify suppression of the agent's testimony about the unrecorded part of such oral statement. Finally, we hold that the district court improperly imposed a special parole term as part of appellant's sentence, and, therefore, that term must be vacated.

The judgment of conviction is modified to exclude the imposition of the special parole term, and, as modified, is affirmed.