Robert I. REED, Petitioner,

v.

**GREAT MEADOW CORRECTIONAL FACILITY, Respondent.**

No. 95–CV–00612C(H).

United States District Court,
W.D. New York.

Sept. 30, 1997.

As Amended Oct. 22, 1997.

Anna Marie Richmond, Buffalo, NY, for Petitioner.

Matthew J. Murphy III, District Attorney of Niagara County (Thomas H. Brandt, Assistant District Attorney, of Counsel), Lockport, NY, for Respondent.

## DECISION and ORDER

CURTIN, District Judge.

Petitioner Robert Reed filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the Western District of New York in July 1995 (Item 1). Petitioner, by his assigned counsel, filed a memorandum in support of the petition on January 28, 1997 (Item 18).

Respondent, Great Meadow Correctional Facility, is represented by the Niagara County District Attorney (Item 4). Respondent has answered both the petition and supporting memoranda (Items 8, 12, 19). Accordingly, the court now proceeds to a decision on the merits of the petition (*See* Items 17, 22).

## PROCEDURAL HISTORY

A Niagara County Court tried petitioner on four counts of first–degree rape in March 1993 (Item 18, pp. 1–2). The four counts of rape were contained in two separate indictments (*Id.*, p. 1). The first indictment alleged that petitioner raped both Wanica Wilson on February 4, 1992 (count one) and Sonya Sealey on June 7, 1992 (count two) (*Id.*). The second indictment alleged that petitioner raped Teresa Knowles twice on December 6, 1992 (counts three and four) (*Id.*). The Niagara County Court permitted the respondent to join the indictments and try all four counts together (*Id.*, pp. 1–2).

A jury convicted petitioner on two of the four counts on March 25, 1993 (*Id.*, p. 2). On April 29, 1993, Niagara County Judge Hannigan sentenced petitioner to two consecutive sentences of 8 1/3 to 25 years (*Id.*). Petitioner filed a motion to vacate the judgment, which was denied on October 29, 1993 (*Id.* p. 3). Petitioner also appealed his conviction to the Supreme Court Appellate Division's Fourth Department. On February 3, 1995, the Fourth Department affirmed petitioner's conviction, but modified his sentences to run concurrently rather than consecutively. *People v. Reed*, 212 A.D.2d 962, 624 N.Y.S.2d 693 (4th Dep't 1995). The New York State Court of Appeals denied petitioner's motion for leave to appeal on June 28, 1995. *People v. Reed*, 86 N.Y.2d 739, 631 N.Y.S.2d 620, 655 N.E.2d 717 (1995).

## DISCUSSION

There are unresolved disparities among the grounds raised in petitioner's *pro se* petition, the initial supporting memorandum, and his assigned counsel's supporting memorandum (*See* Item 1, ¶ 12; Item 10; Item 18). Petitioner, in his *pro se* petition, requests relief on the grounds of both double jeopardy and a denial of his right to appeal (Item 1, ¶ 12(A)(C)). However, it appears that these two claims are the result of a misunderstanding on petitioner's part. While petitioner formally claims the grounds of double jeopardy and denial of appeal, he follows these claims with arguments concerning the sufficiency and credibility of evidence (*Id.*, ¶ 12). In according petitioner the leniency owed to a *pro se* litigant, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Dorsey v. Kelly*, 112 F.3d 50 (2d Cir.1997), the court will proceed by treating both the petition and the first supporting memorandum as presenting four grounds for relief: (1) insufficiency of evidence; (2) incredibility of witnesses; (3) prosecutorial misconduct (*Id.*, ¶ 12; Item 10); and (4) consolidation of the indictments.

### A. Sufficiency of evidence

■ Petitioner argues that the jury based both of his convictions on insufficient physical evidence (Item 1, ¶ 12 (Ms. Knowles); Item 10, p. 1 (Ms. Wilson)). Petitioner's argument on this point proceeds from the erroneous position that New York State law requires physical corroboration in order to convict a defendant of first degree rape. "There is no statutory requirement for corroboration of the crimes of rape ... when predicated ... [on] allegations of forcible compulsion." *People v. King*, 162 A.D.2d 473, 556 N.Y.S.2d 166, 167 (2d Dep't), *appeal denied*, 76 N.Y.2d 859, 560 N.Y.S.2d 999, 561 N.E.2d 899 (1990). The jury was able to convict petitioner on the strength of the victims' testimony (*See* Trial Transcript at 156–61, 353–56). For this reason, the court rejects petitioner's argument regarding the insufficiency of physical evidence.

■ Petitioner also argues that both Ms. Wilson's and Ms. Knowles' testimony are insufficient evidentiary support for the convictions (Item 1, ¶ 12(C)(D); Item 10, pp. 2–7). In making this argument, petitioner actually attempts to re–try the case and substitute his understanding of the evidence for the jury's fact-finding (*See* Item 10, pp. 2–7). Petitioner cannot secure relief simply by vehemently disagreeing with the jury's findings of fact.

As stated before, the jury was able to base both convictions on the testimony of the victims. Ms. Wilson stated at trial that petitioner pushed her down onto a bed, stripped her clothes off, and forcibly had sex with her in spite of her verbal and physical protestations (Trial Transcript at 156–61). Ms. Knowles (with regard to the second alleged rape) testified that petitioner "smothered"

her with a jacket, threatened her with violence, stripped her clothes off, and forcibly had sex with her (*Id.* at 351–55). In addition, the prosecution presented testimony from a rape crisis worker who, responding to a reported rape, had participated in a physical examination of Ms. Knowles on December 5, 1992 (*Id.* at 297–305).

■ In order to determine whether there is constitutionally sufficient evidence to support a guilty verdict, this court must view the evidence in a light most favorable to the prosecution and then decide whether the record is "so totally devoid of evidentiary support that a due process issue is raised." *Bossett v. Walker,* 41 F.3d 825, 830 (2d Cir. 1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995) (*quoting Mapp v. Warden, N.Y. State Correctional Inst. for Women,* 531 F.2d 1167, 1173 n. 8 (2d Cir. 1976), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976)). In short, the immediate trial record is certainly not "totally devoid of evidentiary support." *Bossett,* 41 F.3d at 830. It was within the jury's province to base its decision on "circumstantial evidence and inferences based upon the evidence." *Id.* (*quoting United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993)). The jury in the immediate case made reasonable inferences based on pertinent evidence, and then convicted petitioner of two counts of first–degree rape. Petitioner's claim that his convictions were based on constitutionally insufficient evidence is without merit.

## B. Credibility of the Witnesses

■ Petitioner argues that the victims' testimony was not credible and that, as a result, his convictions represent a violation of due process (Item 10, pp. 2–3, 5–7). The issue of whether Ms. Wilson or Ms. Knowles were credible witnesses was an issue properly left to the jury's fact-finding discretion. *United States v. Gallo–Roman,* 816 F.2d 76, 82 (2d Cir.1987); *Anderson v. City of Bessemer,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (stating that finder of fact is in unique position to determine witness credibility). Federal district courts are not in a position to "redetermine credibility of witnesses whose demeanor has

been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983); *see also Clark v. Irvin,* 844 F.Supp. 899, 904 (N.D.N.Y.1994). Consequently, petitioner's claim regarding the credibility of the victims' testimony must fail.

## C. Prosecutorial misconduct

■ Petitioner also makes a conclusory argument regarding the Niagara County District Attorney's use of perjured testimony (Item 10, p. 8). Petitioner has stated that a corrupt district attorney poses as much of a threat to the community as any criminal might and that the state, in this case, knowingly used false testimony to secure the convictions (*Id.*). In order to prevail on this ground, petitioner must demonstrate, among other things, that the perjured testimony was crucial to his conviction and that had it been exposed it would have impeached the witness so severely that the jury would have probably discredited that witness's testimony. *See Napue v. People of the State of Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

While petitioner's argument on this ground is solid in theory, *Napue* is inapposite to the immediate case. In *Napue,* the prosecution's key witness lied during direct examination when he denied that the District Attorney had offered to reduce his sentence in exchange for his testimony. *Id.* at 270–71, 79 S.Ct. at 1177–78. The prosecutor conducting the examination knew at that time that the witness's answer was false. *Id.* The court in *Napue* went on to note, "[h]ad the jury been apprised of the true facts, however, it might well have concluded that [the witness] had fabricated testimony in order to curry the favor of the [prosecutor]." *Id.* at 270, 79 S.Ct. at 1177. The defendant's attorney in *Napue* was unable to establish the falsity of the witness's statement on cross examination and the jury was left to evaluate that witness's testimony without having reason to discredit the testimony entirely. *See id.* at 268 n. 3, 79 S.Ct. at 1176 n. 3.

■ In the immediate case, petitioner's attorney confronted both Ms. Wilson and Ms. Knowles regarding the veracity of their testi-

mony by pointing out the inconsistencies between their testimony at trial and previously sworn statements (*See* Trial Transcript at 171–75, 194–200, 371–74, 399–400, 407–08). Petitioner claims that these inconsistencies warrant relief pursuant to *Napue* (Item 10, pp. 2–3, 5–7). However, these alleged inconsistencies concern immaterial factual details and do not indicate that the victims testified in the context of a self-interested exchange. As a result, the court finds petitioner's claim for relief on this ground to be unpersuasive.

### D. Consolidation of Indictments

Petitioner argues that Judge Hannigan's decision to allow the joinder of the two indictments (92–116 and 92–373) "jeopardized [his] right to a fair trial and due process of law" (Item 18, p. 11). He further states that the joinder "caused the jury to afford the scant evidence ... more weight than it deserved" and "the conflation of proof on the two separate indictments bolstered three weak cases." (Item 18, pp. 13, 15).

[8] While petitioner's arguments might appear logical on their face, they are not supported by the case law. Rather, "joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Herring v. Meachum,* 11 F.3d 374, 377 (2d Cir. 1993), *cert. denied,* 511 U.S. 1059, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994) (quoting *Tribbitt v. Wainwright,* 540 F.2d 840, 841 (5th Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977)). Joinder " 'is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person ... in the same trial is a valid governmental interest.' " *Herring,* 11 F.3d at 377 (quoting *Spencer v. Texas,* 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967)).

█ *Herring* establishes that "where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." *Id.* at 377–78.

█ *Herring* is directly applicable to petitioner's case. Petitioner's case concerned three unrelated rapes (four counts) that were tried together; *Herring* concerned two unrelated murders (four counts) that were tried together. It is pertinent that both rape and murder are felonies. Similarly, the petitioner in the case at bar was found guilty on only two of the four counts, the same as petitioner in *Herring.*

In *Herring,* the Second Circuit held that petitioner did not make the required showing of actual prejudice because:

> The jury at petitioner's trial was instructed on three separate occasions that evidence of one murder was not to be used to determine petitioner's guilt with respect to the other....
>
> Moreover, because the evidence with respect to each murder was distinct and easily compartmentalized, the risk of jury confusion at petitioner's trial was significantly limited....
>
> Nor is there any showing that the jury improperly credited ... testimony for ... spillover corroboration ... [to] improperly motivate[ ] the jury's verdict as to the other charges.

*Id.* at 378.

Likewise, in the case at bar, petitioner has failed to make a showing of actual prejudice. First, like *Herring,* the jury at petitioner's trial was instructed on two separate occasions that evidence of one rape was not to be used to determine petitioner's guilt with respect to the other. A review of the record indicates that Judge Hannigan told the jury:

> these decisions that you are about to make are separate and distinct and have no spillover value, one on the other, or to the other. The evidence that you have received with respect to each separate and distinct event is to be used for that purpose and for that purpose only. And if you reach a determination that the evidence under the first count of the indictment is sufficient or insufficient, that is, the defendant is guilty or not guilty, of the first count, that has no bearing at all upon the second, third or fourth count. These

verdicts are completely independent of—one of the other. The evidence with respect to one count may be entirely satisfactory to you, and the evidence with respect to another count may be entirely unsatisfactory to you.

(Trial Transcript at 649–50). Furthermore, only moments later, the Judge reminded the jury that:

We have four trials being tried before one jury representing the community. As long as that jury understands that these are four separate, distinct trials, and you assess the evidence with respect to each count separately and distinctly, and the verdict with respect to one has no bearing on your verdict with respect to any other one. They are separate decisions that you're going to reach. So you have to take a look at the evidence with respect to each one individually....

(*Id.* at 651). Thus, as in *Herring*, the jury was properly instructed.

Second, as in *Herring*, the crimes took place on different dates (February 24, 1992, June 7, 1992, and December 6, 1992), with different witnesses, and with no distinct *modus operandi*. *See Herring*, 11 F.3d at 378. Thus, the evidence for each rape was "distinct and easily compartmentalized" which decreased the risk of jury confusion. *Id.*

Third, as in *Herring*, there is no showing in petitioner's case that the jury was improperly motivated by spillover corroboration *Id.* Rather, the jury's acquittal of petitioner on the Sealey charge and on the first Knowles charge "goes far toward answering any claim that corroboration on th[ose] count[s] improperly motivated the jury's verdict as to the other charges." *Id.* Also, like *Herring*, the jury requested a re-reading of testimony (victim Wanica Wilson) and "[b]ased on the instructions, the jury seems to have carefully evaluated the evidence on each count separately; it convicted petitioner on two of the counts, but acquitted him on the other two." *Id.*

Finally, petitioner's reliance on *New York v. Shapiro*, 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980), in support of his argument that the joinder of sex offenses may create an "impermissible risk" of preju-

dicing the jury against the defendant is misguided. *Id.*, 431 N.Y.S.2d at 425–27, 409 N.E.2d at 900–03. The *Shapiro* court found that the trial court had abused its discretion by joining the first indictment, which involved 64 counts of homosexual sodomitic acts with under-age boys over the course of a year and a half, with the second and third indictments, which involved a far more serious charge of promoting sexually aberrant conduct and took place on a single evening. *Id.* at 424–25, 409 N.E.2d at 899–901. The Court of Appeals was concerned about the strategy of parading a series of lesser offenses before the jury in order to predispose the jury towards reaching a guilty verdict on a more serious and unrelated charge. *Id.* at 426, 409 N.E.2d at 901–02. This strategy was not present in the immediate trial, where each separate count of rape was no more severe than any of the others. *See id.* at 427, 409 N.E.2d at 902–03.

In light of the Second Circuit's decision in *Herring* and the discrepancies between the offenses joined in the immediate case and *Shapiro*, the court rules that the joinder of the two indictments was proper.

## CONCLUSION

The petition is hereby dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. In addition, for the reasons stated above, I conclude that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and accordingly I deny a certificate of appealability. Thus, respondent's motion to dismiss is granted (Item 8). As a result, the court denies petitioner's outstanding motions as they are now moot (Items 7 and 10).

Also, for the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a), and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States Dis-

trict Court, Western District of New York within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.