**Julius DAVIS, Petitioner,**

v.

**Walter R. KELLY, Superintendent, Attica Correctional Facility, Respondent.**

No. 97–CV–193H.

United States District Court,
W.D. New York.

April 10, 1998.

Julius Davis, Attica, NY, pro se.

Paul J. Williams, III, J. Michael Marion, Kevin M. Dillon, Erie County District Attorney's Office, Buffalo, NY, for Walter R. Kelly.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is dismissed.

## *BACKGROUND*

Petitioner Julius Davis ("petitioner") was indicted on two counts of Murder in the Second Degree under N.Y. Penal Law § 125.25(1), and one count of Criminal Possession of a Weapon in the Second Degree under N.Y. Penal Law § 265.03.[1] Those

---

**1.** Those sections of the penal law provide:

*Murder in the second degree*

A person is guilty of murder in the second degree when:

1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime; or

(b) The defendant's conduct consisted of causing or aiding, without the use of duress or deception, another person to commit suicide. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the second degree or any other crime;

N.Y. Penal Law § 125.25(1)

charges arose out of the shooting deaths of Darryl Collins and Stanley Collins on May 21, 1986.[2]

Petitioner had spent the previous night as a guest at Stanley Collins' home. During the day, Stanley Collins left and when he returned home, he found things missing. Witnesses testified that Stanley Collins threatened to harm petitioner and then went looking for petitioner brandishing a large bed post. Stanley Collins went to a busy intersection in Buffalo where many people were gathered. Petitioner's sister drove him by the intersection and petitioner got out of the car to talk to Stanley Collins.

This confrontation turned deadly when petitioner drew a pistol and shot Stanley Collins. Petitioner argued that the victim had threatened him with the bedpost. Testimony from eyewitnesses indicated that petitioner walked away towards his sister's car, turned back and shot the victim twice more while he lay on the ground. Stanley Collins died as a result of the shooting.

Petitioner then reentered the car and his sister drove a few blocks further. Petitioner jumped from the car when he saw Darryl Collins standing in front of a store with several other people. Petitioner chased Darryl Collins and shot him. Darryl Collins also died as a result of this incident.

On April 16, 1987, following trial, the jury returned a verdict finding petitioner guilty on all three counts. On May 26, 1987, petitioner was sentenced to consecutive twenty-five-year-to-life terms for the murder charges, and a concurrent five-to-fifteen year term for the weapons charge.

Davis appealed his conviction to the Appellate Division, Fourth Department, and raised five arguments, including that the trial court improperly denied defendant's motion for severance of the two counts of murder, and that the trial court erred in denying a motion for a mistrial based upon the prosecutor's misconduct during the questioning of a defense witness (see Brief and Appendix for Appellant, Item # 6, Exhibit C). On February 1, 1991, the Fourth Department unanimously affirmed petitioner's conviction. *People v. Davis*, 170 A.D.2d 956, 566 N.Y.S.2d 892 (4th Dept.1991).[3] On April 30, 1991, the New York State Court of Appeals denied leave to appeal. *People v. Davis*, 77 N.Y.2d 960, 570 N.Y.S.2d 493, 573 N.E.2d 581 (1991) (table).

In this petition for habeas corpus relief, petitioner raises two arguments that are similar to two of those raised in the state court proceedings. Petitioner asserts that the trial court's denial of his motion for severance of the two counts of murder deprived him of his right to a fair trial, and his right to present evidence on his own behalf. Petitioner also asserts that prosecutorial misconduct occurring during cross examination of a defense witness was so prejudicial that it violated petitioner's rights to due process and a fair trial.

### DISCUSSION

#### I. *Exhaustion*

Before a federal court may address the merits of any constitutional issue on petition for a writ of habeas corpus, the petitioner must have exhausted all available state remedies as to that issue. 28 U.S.C.

---

*Criminal possession of a weapon in the second degree*
A person is guilty of criminal possession of a weapon in the second degree when he possesses a machine-gun or loaded firearm with intent to use the same unlawfully against another.
Criminal possession of a weapon in the second degree is a class C felony. N.Y. Penal Law § 265.03

**2.** The victims were not related.

**3.** The 4th Department's full decision was as follows:
Judgment unanimously affirmed. Memorandum: We find no merit to defendant's conten-

tion that the People failed to disprove his justification defense beyond a reasonable doubt (see, Penal Law § 35.15[2][a]); *People v. Goetz*, 68 N.Y.2d 96, 114–115, 506 N.Y.S.2d 18, 497 N.E.2d 41, *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989). Based on the proof with respect to each victim, the jury was permitted to find that defendant was not entitled to use deadly force against either (*see*, *People v. Troche*, 147 A.D.2d 513, 514, 537 N.Y.S.2d 602, *lv. denied*, 73 N.Y.2d 1022, 541 N.Y.S.2d 777, 539 N.E.2d 605). We have examined defendant's remaining contentions and likewise find them lacking in merit.
*People v. Davis*, 170 A.D.2d 956, 566 N.Y.S.2d 892 (4th Dept.1991).

§ 2254(b) (1998); *Jones v. Vacco*, 126 F.3d 408, 413–14 (2d Cir.1997). ("It is well settled that all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus."). Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184, (1984).

■ The exhaustion doctrine also requires that a habeas petitioner seeking to upset his or her state conviction on federal grounds must first give the state courts a fair opportunity to pass upon all of the federal claims asserted in the petition. *Id.* at 191; *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379, (1982). In order to have fairly presented federal claims to the state courts, the petitioner must set forth in state court all of the essential factual allegations and legal doctrines asserted in the federal petition. *Daye*, supra, 696 F.2d at 192–93. This requirement is satisfied, even where specific federal constitutional provisions or case law have not been cited, if the nature or presentation of the claim in state court was likely to alert that court to the claim's federal nature. *Id.* at 192.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law on April 24, 1996, and amended 28 U.S.C. § 2254 to provide that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1998); *see also, Arkim v. Irvin*, 996 F.Supp. 245 (W.D.N.Y.1998), (despite respondent's contention that petitioner failed to raise two arguments issues on direct appeal, "in the interests of justice and finality, and giving the petition the broad construction to which it is entitled, the court will consider the merits of each of the grounds listed.") (citation omitted), *and, Steele v. Walter*, 999 F.Supp. 385 (W.D.N.Y. 1998) (28 U.S.C. § 2254(b)(2) "allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, there-

by effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim.") (citations and quotes omitted).

■ Respondent argues that petition should be dismissed for failure to exhaust. In this case, petitioner raises two claims, one which is unquestionably exhausted and the other which may not be. The claim of prosecutorial misconduct included citations to federal case law which would have put the appellate court on notice of the constitutional issues involved in the claim. However, respondent claims that petitioner failed to exhaust his severance claim. Respondent points out that petitioner relied solely upon state law in his appeal to the Appellate Division.

Petitioner notes that along with the state court cases relied upon, his brief to the Appellate Division also stated: "[a]dditionally, the denial of the severance motion deprived appellant of his right to present testimony on his own behalf due to his fear of cross-examination concerning [the murder Stanley [Collins]]." Petitioner claims that the fact pattern involved here is well within the mainstream of constitutional litigation, and was thus properly presented to the state appellate courts under *Daye*. Petitioner's Memorandum of Law, Item # 11. However, as explained below, petitioner's claims are without merit. Therefore, under 28 U.S.C. § 2254(b)(2) (1998), I decline to reach this issue and will consider the merits of both claims.

## II. Severance of the Two Murder Charges

Petitioner argues that he is entitled to a writ of habeas corpus because the trial court refused to sever the two murder counts. Before trial, defense counsel moved for severance but the trial court denied the motion. Petitioner sought severance on the ground that there was substantially more evidence in support of the murder of Stanley Collins than of the murder of Darryl Collins. Defense counsel also argued that the two murder counts should not have been joined under New York Criminal Procedure Law, because they were not part of a single transaction.

During oral argument of this motion, defense counsel asserted that the jury would be incapable of separating proof of the two charges. He implied that there might be different defenses to the separate counts, a justification defense and an extreme emotional disturbance defense. March 30, 1987 Hearing Transcript, p. 3.

At the close of the prosecution's case, petitioner moved to limit cross-examination of the petitioner to the shooting of Darryl Collins, in the event that he took the stand. April 14, 1987 Trial Transcript, p. 30–33. In particular, defense counsel sought to prevent questioning about the death of Stanley Collins as evidence of prior bad acts. He noted that this issue would not have arisen had the two murder counts been severed. The trial court denied this motion, and based on this ruling, petitioner did not testify.

■ Petitioner asserts that the refusal to sever trial on the two murder counts violated his right to due process. In *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir.1993), *cert. denied*, 511 U.S. 1059, 114 S.Ct. 1629, 128 L.Ed.2d 353, (1994), the Second Circuit Court of Appeals considered the issue of whether claims had been impermissibly joined. The Court stated, "joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Id.* (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir.1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587, (1977)). Joinder " 'is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the conve-

nience of trying different crimes against the same person … in the same trial is a valid governmental interest.' " *Herring*, 11 F.3d at 377 (quoting *Spencer v. Texas*, 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606, (1967)). *Herring* establishes that "where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." *Id.* at 377–78.

■ Here, petitioner failed to demonstrate actual prejudice in his trial. A review of the record reveals that the trial judge instructed the jury to separately consider the two murder counts. April 15, 1987 Trial Transcript, pp. 121, 125–26.[4] Petitioner notes that the jury asked for additional instructions after the trial judge gave the charge and argues that such questioning indicates that the jury had difficulty sorting out the two charges. Yet the record can be read to support the opposite conclusion—that the jury carefully followed the admonition to review each count separately. During one exchange, the jury foreperson asked the judge to repeat the jury instruction on the distinction between second degree murder and the lesser-included offense of first-degree manslaughter. April 16, 1987 Trial Transcript, p. 5. The foreperson told the judge that the jury was confused only as to the second count of murder (Stanley Collins)—indicating that they had already reached the conclusion that petitioner was guilty of murder on the first count (Darryl Collins).[5] Such a conclusion demon-

---

4. The trial judge gave the jury the following instruction: "[t]aking each count separately, count one separately and in the following manner: First consider the crime of murder in the second degree, then you consider the crime of manslaughter in the first degree. You must consider each count, count one and count two, separately as I have instructed you." April 15, 1987 Trial Transcript, p. 121.

In describing the defense of justification, the court stated: "[s]ince we have two separate allegations of murder here in this case, I, again, caution you that you must review each count separately, and obviously, you must apply the rules [of] self-defense that I am about to give you separately to each count and the facts that you find apply to each count of the indictment." April 15, 1987 Trial Transcript, pp. 125–26.

5. Before the judge re-read the instructions, he had the following exchange at the bench:

THE FOREPERSON: We seem to be hung up on one count.

THE COURT: Which count, first count or second count?

THE FOREPERSON: Second count.

THE COURT: The second count which is the first homicide. You are hung up, that is there is an inability to agree one way or the other. You have got a split vote?

THE FOREPERSON: Right.

THE COURT: Well, is there any way I can help?

THE FOREPERSON: We thought with this reading of your interpretation would help.

strates that the jury was able to separate the proof involved in the two murder counts.

Petitioner's claim also relies upon the similarity of the charges and a discrepancy in the amount of evidence with respect to the two charges. Petitioner cites *People v. Shapiro*, 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980) in support of this argument. Shapiro involved joinder of one indictment, alleging many acts of sodomy over the course of a year and a half, with two additional indictments, which involved charges of promoting prostitution taking place on a single evening. *Id.* 431 N.Y.S.2d at 424–25. The Court of Appeals found that the trial court had abused its discretion in refusing to sever these indictments. The *Shapiro* court "was concerned about the strategy of parading a series of lesser offenses before the jury in order to predispose the jury towards reaching a guilty verdict on a more serious and unrelated charge." *Reed v. Great Meadow Correctional Facility*, 981 F.Supp. 184 (W.D.N.Y. 1997), (Curtin, J.) (joinder of four counts of rape, arising from three unrelated incidents did not cause actual prejudice and therefore did not violate due process). Such concerns are not present in petitioner's case, because there were two equally serious charges of second degree murder. While it is true that there were many witnesses who testified to the murder of Stanley Collins, there were also several eyewitnesses who testified to the murder of Darryl Collins. In addition, at least three witnesses observed *both* murders from their van as they drove down the street.

Petitioner also argues that he would have testified in his own behalf with respect to the charge of murdering Darryl Collins, but for the expected cross-examination with respect to the prior bad act of the murder of Stanley Collins. He claims that the trial court's refusal to sever therefore prevented him from testifying on his own behalf. However, petitioner has not demonstrated that he was actually prejudiced. As mentioned, several eyewitnesses testified with respect to the shooting of Darryl Collins. Petitioner's testi-

mony would not have been sufficient to convince a jury that that shooting was the result of extreme emotional disturbance. The mere possibility that he might have offered a defense of extreme emotional distress, without more, is insufficient to find that he was denied a fair trial.

Petitioner failed to demonstrate that he was prejudiced by the denial of a motion to sever the two murder charges. Thus, petitioner is not entitled to a writ of habeas corpus on this ground.

### III. *Prosecutorial Misconduct*

Petitioner alleges that he was denied a fair trial based upon prosecutorial misconduct. The conduct at issue is as follows. In cross-examination of petitioner's brother, the prosecutor asked whether the witness's (and petitioner's) sister had stabbed another person. Defense counsel instantly objected to this "outrageous" question. The trial court sustained the objection and instructed the jury to "disregard the question and not to draw any inferences from the formation of that question." April 14, 1987 Trial Transcript, p. 23. Defense counsel thereafter moved for a mistrial, but the court denied the motion. April 14, 1987 Trial Transcript, p. 27–30.

 In order to obtain habeas corpus relief on grounds of prosecutorial misconduct, petitioner must demonstrate "that he suffered actual prejudice because the prosecutor's [conduct] had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir.1994). In assessing whether this standard has been met, the court should consider the severity of the prosecutor's conduct, what steps, if any, the trial court may have taken to remedy any prejudice, and whether the conviction was certain absent the prejudicial conduct. *Id.; see also Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (although prosecutor's reference in summation to petitioner's failure to produce

---

What happens if we can't come to a decision?

THE COURT: It is a hung jury.

THE FOREPERSON: Does that mean all of the charges are dismissed?

Or if—Does it have to be retried on count—

THE COURT: He would have to be retried on the one count.

THE FOREPERSON: Only on the one count? April 16, 1987 Trial Transcript, pp. 4–5.

witness was improper, petitioner could not demonstrate actual prejudice as a result).

 In this case, there was only one alleged instance of prosecutorial misconduct, and the judge sustained an objection and gave a corrective instruction immediately. Petitioner has failed to show any prosecutorial misconduct. In addition, conviction was certain even absent the prosecutor's question.

Accordingly, petitioner is not entitled to a writ of habeas corpus based upon prosecutorial misconduct.

## CONCLUSION

The petition for a writ of habeas corpus is hereby **DISMISSED.** Petitioner was not denied a fair trial based upon the refusal of the trial court to sever the two counts of murder, nor did he demonstrate prosecutorial misconduct which rose to the level of prejudicial error.

**SO ORDERED.**